**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DANIEL ZANG, | No. 17-55358 |
| Plaintiff-Appellant, | D.C. No.<br>3:15-cv-00475-AJB-DHB |
| v. | |
| UMAMI SUSTAINABLE SEAFOOD, INC., | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Submitted June 6, 2018[**]
Pasadena, California

Before:  WARDLAW and CHRISTEN, Circuit Judges, and MOLLOY,[***] District Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

Plaintiff-Appellant Daniel Zang appeals a district court order entering summary judgment in favor of Defendant-Appellee Umami Sustainable Seafood. We have jurisdiction under 28 U.S.C. § 1291. We review de novo and may affirm for any reason supported by the record. *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008). We apply New York law, which the parties agree governs.

1. We affirm summary judgment on Zang's contract claim. On its face, the Employment Agreement unambiguously requires "any group of persons acting in concert" to function collectively, rather than in parallel. *See Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 920 N.E.2d 359, 363 (N.Y. 2009) ("Whether an agreement is ambiguous is a question of law . . . determined by looking within the four corners of the document, not to outside sources." (quoting *Kass v. Kass*, 696 N.E.2d 174, 180 (N.Y. 1998))). Paragraph 4(c)(iii)(x) of the Employment Agreement recognizes a Non-Negotiated Change in Control only when such a group "becomes *the* beneficial owner . . . of securities of the Company possessing more than fifty percent . . . of the voting power for the election of directors of the company." The plain meaning of the word "the" in this sentence, combined with the singular term "owner" rather than "owners," unambiguously refers to a single beneficial owner. A group acting in concert can function as a

2

single beneficial owner only if it acts collectively. *See Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014) ("The words and phrases used by the parties must . . . be given their plain meaning." (quoting *Brooke Group Ltd. v. JCH Syndicate 488*, 663 N.E.2d 635, 638 (N.Y. 1996))).

Here, Zang has not created a genuine dispute about whether a group acting in concert collectively became "the beneficial owner . . . of securities of the Company possessing more than fifty percent . . . of the voting power for the election of directors of the company." Any such group must have included Daito Gyorui Co., Ltd. to reach the "fifty percent" threshold. But Zang points to no evidence permitting a reasonable inference that Daito was part of a group acting collectively. In fact, Daito expressly disclaimed membership in a group when Daito filed its Schedule 13D with the Securities and Exchange Commission, and Zang's hunches and speculation about the creditors' arrangements amount to no more than a "scintilla of evidence in support of [his] position." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Gault email chain does not create a genuine dispute of material fact to the contrary. At best, the emails are evidence that Daito was coordinating with Atlantis insiders on its own behalf; the emails do not support an inference that Daito was acting in concert with Atlantis creditors, nor with Atlantis creditors in a group.

Even if Zang could show that Atlantis's non-Daito creditors, individually or collectively, obtained enough Umami shares to trigger requirements under the federal securities laws, *see, e.g.*, 15 U.S.C. § 78p(a), any group of those creditors that did not count Daito as a member would still fall short of the Employment Agreement's contractual "fifty percent" threshold. Accordingly, summary judgment was proper on this claim.

2.      We also affirm summary judgment on Zang's claim for breach of the implied covenant of good faith and fair dealing. On this record, no reasonable trier of fact could conclude that Umami induced Zang to resign. To the contrary, Umami consistently advised Zang that it did not believe he was entitled to the benefits he seeks.

Zang cites no authority for the proposition that, under New York law, Umami owed him a substantive explanation of its position. *Dalton v. Educational Testing Service* is not to the contrary, because Zang's Employment Agreement did not "contemplate[] the exercise of discretion." *Dalton*, 663 N.E.2d 289, 291 (N.Y. 1995). If Zang resigned following a Non-Negotiated Change in Control, Umami had no choice but to pay. Since Zang has not shown that New York law imposes the obligation Umami allegedly breached, summary judgment was proper on this claim.

**AFFIRMED.**

Zang v. Umami Sustainable Seafood, Inc., No. 17-55358

WARDLAW, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent as to whether Zang has adduced sufficient evidence to create a genuine dispute of material fact regarding whether the Atlantis Group ("Atlantis") creditors, including Daito, acted in concert collectively to become the beneficial owners.[1] Following a major shakeup at Umami, Zang resigned, citing a "Non-Negotiated Change in Control" clause in his Employment Agreement, which entitled him to certain benefits for having good cause to resign. The Employment Agreement defines a Non-Negotiated Change in Control as when "any group of persons acting in concert becomes the beneficial owner . . . of securities of the Company possessing more than fifty percent . . . of the voting power for the election of 17 directors of the company." The majority affirms the grant of summary judgment because it construes this language to mean that to constitute a "group" there must be a "single beneficial owner," and says no more than a scintilla of evidence exists to create a material dispute because Daito was not part of the group acting collectively. I disagree.

---

[1] Although I agree with the majority that Umami did not breach the implied covenant of good faith and fair dealing because Umami did not induce Zang to resign, I would reverse the district court's grant of summary judgment on his contract claim.

Umami's employees created a complex plan to oust then Chief Executive Officer and Chairman of the Board, Steindorsson from his position as CEO, Chairman of the Board, and majority stockholder because he had misappropriated eighteen million dollars in assets from Umami. One part of this complex plan involved the secured creditors of Atlantis, which was Umami's largest shareholder and which was owned by Steindorsson. Atlantis had pledged its majority interest, and therefore, Steidersson's majority interest, in Umami stock to its secured creditors as collateral in various credit agreements.

Atlantis defaulted on the credit agreements of its secured creditors, but Umami convinced the Atlantis creditors to collectively forebear on foreclosure until Umami was able to oust Steindorsson, i.e., to act "collectively or in concert."[2] The collective action of the Atlantis creditors resulted in them becoming "beneficial owners" under the Non-Negotiated Change in Control clause because, as a result of their collective action, they possessed "more than fifty percent . . . of the voting power for the election of 17 directors of the company."

---

[2] As alleged in Zang's First Amended Complaint ("FAC"), these actions resulted in an increase in ownership of Umami stock as follows: Daito 21.8%; Robert Gudfinnsson, 11.7 %; Jones Gable, 13.4%; Kali Tuna d.o.o and, Baja Aqua Farms, S.A. de C.V 15.1%. Collectively, these parties became the beneficial owners of Umami under 17 C.F.R. 250.13d-3.

The majority bases its finding that the Atlantis creditors did not act as a group on the actions of one creditor, Daito, concluding that Daito was not part of the plan because "Daito expressly disclaimed membership in a group when Daito filed its Schedule 13D with the Securities and Exchange Commission." However, in making that finding, the majority disregarded an e-mail chain between an Umami employee, Mike Gault, and Daito. In one e-mail, Gault informs Daito that Daito was at serious risk of losing all of its investment and getting involved in a "scandal that would destroy the reputation of both companies and many people" if it did not comply with Umami's plan. In a separate e-mail, Gault also references at least one payment he forwarded to Daito on behalf of the Atlantis creditors. Thus, viewing the evidence in the light most favorable to Zang, as we are required to do on a motion for summary judgment, *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002), these e-mails create at least a genuine dispute as to whether Daito acted in a group with the Atlantis creditors.

For this reason, there is at least a material dispute as to whether the Atlantis creditors acted as a group, and I would reverse the district court in part on that ground.